WARD, Judge,
concurring.
The majority correctly states that this Court en banc has decided to adhere to Hall v. Louisiana State Racing Commission. Were this not so, I would dissent rather than concur with the majority in this case.
I disagree with the Court en banc decision that Hall should be the law in this circuit. Nonetheless, I am bound by the en banc decision to join in the affirmation of the District Court’s remand of this case, because Hall is controlling — until overruled.
The decisions in Hall and in this case hold that due process is violated by a Louisiana Racing Commission ruling “based entirely on documentary hearsay evidence, the basis for which the adverse party is not able to inquire into.” The first inference to be drawn by characterizing the evidence as *587 hearsay is the perjorative connotation that it is unreliable and cannot support a finding by the Commission. The second inference is derived from the first — the basis of the hearsay cannot be the subject of inquiry. Both are incorrect and have brought the majority of the Court to the incorrect conclusion that a Commission ruling based upon hearsay evidence violates due process. While hearsay may in some cases be unreliable, in others it is good evidence and may be relied upon by the Commission and, most certainly, the basis of the hearsay may be inquired into.
The legislative history of the Louisiana Administrative Procedure Act (LAPA) and the comments of Professor Robert Force and Lawrence Griffith decisively show that hearsay is admissible evidence that may be considered in administrative hearings. In adopting the Louisiana Administrative Procedure Act, the legislature rejected a model rule which would have applied the rules of evidence of non-jury civil trials, including the rule against the admissibility of hearsay evidence. Recognizing that in most instances an agency subject to the act would be composed of lay persons, the legislature adopted Professor Dakin’s suggestion and enacted Section 956(2) of the Act which provides:
All evidence, including records and documents in the possession of the agency of which it desires to avail itself, shall be offered and made a part of the record, and all such documentary evidence may be received in the form of copies or excerpts, or by incorporation by reference. In case of incorporation by reference, the materials so incorporated shall be available for examination by the parties before being received in evidence.
Professors Force and Griffith’s comments are persuasive, in fact, they leave no room for doubt. In discussing the use of hearsay before administrative agencies, their rhetorical questions place the hearsay problem in proper focus.
.... However, is it necessarily true that only legally competent evidence is probative evidence? Does it make any sense to say that hearsay, for example, can be admitted in an agency hearing but that the agency may not rely on it in reaching its decision? Why admit the evidence in the first place? Why didn’t the Louisiana legislature opt for the standard of admissibility used in judicial proceedings? Probably the legislature intended to allow agencies to admit and rely on evidence which was compelling or persuasive regardless of whether it would have been admissible or relied upon by a court. The test contained in the LAPA essentially asks whether the evidence which is admitted and relied on by the agency is the kind of evidence in terms of its source, freshness, clarity, consistency, objectivity, etc., that reasonable and prudent people would rely on in conducting their affairs. The world does not function according to the rules of evidence. Courts are authorized to set aside agency decisions only where they are ([mjanifestly erroneous in view of the reliable, probative, and substantial evidence....)
Force and Griffith, The Louisiana Administrative Procedure Act, 42 La.Law Rev. 1227, 1266-67 (1982).
In a case similar to but more “difficult” than the one now before us, this Court accepted the proposition that hearsay was admissible before an administrative agency. Force and Griffith also discuss that case.
In Fisher v. Louisiana State Board of Medical Examiners, [352 So.2d 729 (La.App. 4th Cir.1977) ] the court was faced with an administrative record in which hearsay was admitted by the agency and relied upon. The court was persuaded by the view of Professor Kenneth C. Davis, who stated that:
[T]he reliability of hearsay ranges from the least to the most reliable. The reliability of non-hearsay also ranges from the least to the most reliable. Therefore the guide should be a judgment about the reliability of particular evidence in a particular circumstance, not the technical hearsay rule with all its complex exceptions.
At issue in Fisher was a report made by a D.E.A. agent based upon information supplied by informants and other law enforcement officers. The court concluded that the hearsay evidence was reliable *588 and, therefore, appropriate for the agency’s reliance. The case does not stand broadly for the proposition that an agency may always rely on hearsay. Instead, under the facts of the case the evidence was reliable. This approach seems preferable to the automatic reversal of an agency decision based solely upon hearsay without any consideration as to the reliability of the evidence and without any concern for fairness or unfairness to the party.
* # * * * *
Id. at 1267.
Because in our case the evidence against Miller was hearsay, the majority reaches the conclusion that Miller was not able to inquire into the basis for it. This conclusion is questionable at best, but in this particular case, considering the issues before the Racing Commission, it is simply not true. In these cases there are only two crucial questions: Did the urine specimen come from a particular horse? Did a test of the urine specimen show the presence of prohibited drugs? The Rules of the Racing Commission permit “the owner, trainer, hot walker, groom, authorized agent, or chemist, representing the owner or trainer” to be present at all times during the taking of a sample by a representative of the Commission. Additionally, the veterinarian representing the owner or trainer has the right to “attend and witness the examination and testing” of the specimen. LAC 11-6:53.24.
Section 956(5) of the LAPA provides the party adverse to the agency the right to subpoena witnesses, including Commission employees or experts, who may then be questioned as under cross-examination.
Furthermore, subsection 956(5) confers upon the agency or subordinate presiding officer a subpoena power. Such power clearly implies that a party who tenders fees and expenses has the right to request that witnesses be subpoened.
* * * * * *
In this way the party would not be deprived unfairly of cross-examination.
Id., at 1267-68.
The essence of the majority view is that deprivation of the right of cross-examination was a denial of due process. Emphasizing the right, the majority following Hall, interprets the right to cross-examination under Section 955(C) as the right to require the agency to produce witnesses to prove its case. In my opinion Section 955(C) means only what it says, the “opportunity [to conduct cross-examination] shall be afforded all parties” — not that the agency must produce witnesses.
In sum, under the Racing Rules and the Administrative Procedures Act, Heinz Miller or his representative was entitled to be present when the urine speciman was taken and examined, he was entitled to have a split sample tested (which he did and the sample tested positive), and he was entitled to subpoena and question any witness who he believed would prove his defense, including any witness who had previously made a hearsay statement that would be considered by the Commission. Miller, in addition, had the right to cross examine witnesses, including any adverse witnesses subpoened by him who had given hearsay statements. In view of these rights given a party who appears before the Commission, I cannot join in the Court’s conclusion that such a scheme violates the right to due process.