700 So.2d 553 (1997)
Craig BURCKEL
v.
DEPARTMENT OF FIRE.
No. 97-CA-0635.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 1997.
*554 Louis L. Robein, Jr., Robein, Urann & Lurye, Metairie, for Plaintiff/Appellant.
Avis Marie Russell, City Attorney, Franz L. Ziblich, Chief Deputy City Attorney, Joseph V. DiRosa, Deputy City Attorney, Patrick R. Bossetta, Assistance City Attorney, New Orleans, for Defendant/Appellee.
Before KLEES, BYRNES and PLOTKIN, JJ.
PLOTKIN, Judge.
The primary issue in this appeal is whether the City of New Orleans, as appointing authority, presented sufficient evidence to support its dismissal of plaintiff Craig Burckel from his position as firefighter for consumption of alcohol while he was wearing his uniform and representing the fire department, when the City failed to present admissible evidence of his blood alcohol level. A secondary issue relates to the City Civil Service Commission's decision to remand the case to the hearing examiner to allow the City to "to prove up its case" and to allow Burckel an opportunity to cross-examine the evidence against him.

Procedural history
Burckel was dismissed from his position with the New Orleans Fire Department by July 25, 1995 letter from Superintendent Warren E. McDaniels, following an incident in which he was accused of consuming alcohol while working a private "detail" on May 19, 1995. Burckel appealed the dismissal to the City of New Orleans Civil Service Commission, which assigned the case to a hearing examiner. A hearing was held November 1, 1995, after which the dismissal was upheld. Burckel then appealed to a three-person panel of the Civil Service Commission, which reviewed the evidence presented at the hearing and issued an opinion remanding the case to the hearing officer. Burckel appeals that decision.

Facts
At the time of the incident which forms the basis of the instant case, Burckel was a 15-year veteran of the New Orleans Fire Department, who had not been subject to any prior disciplinary action during the course of his career. On May 19, 1995, Burckel was a member of a group of New Orleans Fire Department personnel who worked a "fire watch" at the temporary Harrah's Casino, which was then located in the Municipal Auditorium in the City of New Orleans. The record indicates that fire regulations require such "fire watches" when any of the fire safety equipment malfunctions in buildings housing large groups of people. In this instance, the sprinkler system at Harrah's had been damaged as a result of area flooding earlier that month. When fire department personnel worked such "fire watches," they were considered to be engaged in "off-duty details"; the fire department personnel were paid directly by Harrah's, not by the City of New Orleans.
During the course of the "fire watch" that evening, Burckel was working on the first floor of the casino "in the back." Also working in that area was a cocktail waitress, Caprica McGee, whose testimony was pivotal to the hearing in this case. Ms. McGee stated that during the course of the evening Burckel asked her to bring him a drink containing some type of alcoholic beverage and coke. Because she did not want to serve him, she contacted her manager, she said. Her testimony continued as follows:
THE WITNESS:
She told me to serve him. She said that he was not an employee of the casino and to serve him. I don't know if she knew what, you know, that he wanted alcohol, I don't think that I communicated it to her right, so I did serve him.
MR. GINSBERG: [Hearing Officer]
Was he in uniform?
THE WITNESS:

*555 He had a radio, and he was in uniform. The second time I came to him, you know, he asked for a drink and I brought it the second time, and I said, "I'm sorry," because he asked me, you know, what are you, you know, ignoring me. I said, "I'm sorry, I didn't realize that you could drink." And he looked at me, he smiled and said, "I'm not supposed to." And that's when I got my manager and told him to come on the floor, I needed him immediately. Because I didn't feel right about it in the first place.
Ms. McGee then took the problem to David Pakin, who was the food and beverage manager or supervisor at Harrah's at the time of the incident. Ms. McGee also testified that she was positive that Burckel was the firefighter to whom she served two drinks.
Also testifying at the hearing was Kevin Johnson, who was Harrah's shift manager at the time of the incident. Mr. Johnson stated that he was approached by "David," who told him a fireman was drinking on duty. Mr. Johnson then went across the street to the fire station and reported the incident to whoever was in charge.
That report was made to Captain Bill Mothe, who walked across the street to initiate an investigation. When Captain Mothe arrived, he was approached by District Chief Alan J. Melancon, who was supervising the fire watch. Chief Melancon testified that he had just rotated the firemen on the fire watch and that Burckel had been sent to the second floor. After being apprised of the situation by Captain Mothe, as well as the "security guy" at Harrah's and Ms. McGee, he called for Burckel to come back down to the first floor, Chief Melancon said. When Burckel walked through the door, Ms. McGee said, "That's him," Chief Melancon said.
Thereafter, Chief Melancon arranged for Burckel to be taken by other fire department personnel for testing to confirm his consumption of alcohol. The drug testing was based on "reasonable suspicion" that Burckel had violated fire department policy, Chief Melancon stated.
The actual testing was done by Maria Miller, Operations Manager at Marine Medical Unit, who testified that she initially performed a "swab test," which registered a "weak positive." Ms. Miller's records showing that Burckel registered positive on the "swab test" were admitted at trial. However, according to Ms. Miller, the "swab test" was only the initial step in determining the level of a person's blood alcohol level. Anytime the swab test registers positive, blood is taken, Ms. Miller stated. Thus, she took Burckel's blood. She testified specifically to following the chain of custody procedures.
Nevertheless, the record is devoid of competent evidence on the results of the blood test because the City attempted to present the testimony of Patricia Pizzo, director of toxicology at Laboratory Specialists, Inc. (LSI), the testing facility where the blood sample was sent. However, because Ms. Pizzo was not actually involved in the steps of the testing procedure, the hearing examiner disallowed both Ms. Pizzo's testimony on the results of the blood test and the "litigation package" offered in conjunction with her testimony. See Sciortino v. Department of Police, 94-0356 (La.App. 4th Cir. 9/29/94), 643 So.2d 841.
The testimony of two witnesses was offered by Burckel at the hearing: his own testimony and the testimony of Barry D'Angelo, New Orleans Fire Department Captain. Captain D'Angelo, who supervised Burckel at the time of the incident, rated Burckel's job performance as a firefighter as "excellent," and said that Burckel was very dependable, an all-around outstanding fireman. Captain D'Angelo was also present at Harrah's on the night of the incident and heard Ms. McGee identify Burckel as the firefighter who had requested two alcoholic beverages. Burckel did not appear to be intoxicated or under the influence of alcohol at the time, Captain D'Angelo said.
Burckel emphatically denied that he consumed alcohol while operating the detail at Harrah's on May 19, 1995. He admitted ordering cokes from Ms. McGee, but said that he had not ordered alcohol.

Issues presented
On appeal, Burckel contests the decision of the commission, arguing that his dismissal *556 should have been reversed and he should have been reinstated because the appointing authority failed to present the results of the blood alcohol test. The City of New Orleans argues, on the other hand, that it presented sufficient evidence to support its decision to terminate Burckel even in the absence of evidence of the blood test result. Both parties contest the commission's decision to remand the case to the hearing officer to allow the City to properly present the results of the blood alcohol test and to allow Burckel the opportunity to cross-examine that evidence.

Sufficiency of the evidence
Generally, an appointing authority seeking to discipline a civil service employee carries the burden of demonstrating, by a preponderance of the evidence, that the conduct of the person disciplined "did in fact impair the efficiency and orderly operation of the public service." Newman v. Department of Fire, 425 So.2d 753, 754 (La.1983); Montegue v. City of New Orleans Fire Department, 95-2166 (La.App. 4th Cir. 5/29/96), 675 So.2d 810, writ denied, 96-1707 (La.10/4/96), 679 So.2d 1389. Importantly, the standard for determining whether the appointing authority has carried its burden of proof is preponderance of the evidence.
Presented into evidence at trial was City of New Orleans, Department of Fire, Standard Operating Procedure Number 2/06-P-01-91, relative to substance abuse testing. Section 1.0 of that document, under the heading "ALCOHOL," reads, in pertinent part, as follows:
Employees shall report to work free from the influence and odor of alcoholic beverages. No alcoholic beverages shall be brought into or consumed on Fire Department premises or carried in or consumed in any Fire Department vehicles. Drinking while on duty or being under the influence of alcohol while on duty is cause for termination.
Drinking or being under the influence of alcohol off duty, in uniform, is cause for disciplinary action to be taken. Any member whose off duty use of alcohol results in a violation of departmental rules or policies, including but not limited to excessive absenteeism or tardiness, accidents, or inability to perform duties in a satisfactory manner may be subject to CATEGORY III testing (Reasonable Suspicion Test).
The above procedure sets up a two-tier system for determining the appropriate discipline for employees who violate the department's substance abuse policies through engaging in inappropriate alcohol consumption. The first tier provides for immediate dismissal for an employee for "drinks" while on duty. The second tier allows "disciplinary action" against an employee who "drinks" while off duty and in uniform. Burckel falls under the second category in the instant case. Although "disciplinary action" against an employee who violates the policy while off-duty but in uniform is not specifically defined, dismissal would obviously be the ultimate disciplinary action.
Unquestionably, the record evidence presented in the instant case was sufficient to carry the City's burden of proving that Burckel's conduct impaired the "efficiency and orderly operation of the public service." At trial, one of the primary issues was whether Burckel was subject to Fire Department rules and regulations at the time of the incident since he was "off duty." The Department argued that Burckel was actually "on duty" at the time of the incident. That argument was abandoned on appeal, probably because of the fact that the standard operating procedures apply even to fire department personnel who are "off duty," if they are wearing their uniforms. The testimony of Ms. McGee, when combined with the testimony of Chief Melancon concerning the method by which he identified Burckel as the offending fireman, is sufficient to carry the appointing authority's burden of proof.
Burckel's argument that the results of the blood alcohol test is "critical" to the City's case against him, points loosely to the City of New Orleans' Substance Abuse Policy Memorandum, which states as follows at § 7(e):

ALCOHOLIC OR INTOXICATING BEVERAGESAn employee or others whose blood alcohol level (BAC) is at or over 0.04% during working time or while operating City vehicles/equipment is in violation *557 of the Substance Abuse Policy. The moderate use of alcohol at authorized City functions is not prohibited by this policy.
Burckel make a vague claim on the basis of the above regulation that the City was required to prove that his blood alcohol level was at least 0.04 % in order to take disciplinary action against him.
Although the City Civil Service regulations obviously apply to firefighters generally, on the subject of substance abuse, the Fire Department has adopted more stringent regulations than those applicable to City employees generally. The reason for the stricter regulations is obvious; the Fire Department is closely involved in public safety matters. Any level of intoxication on the part of a firefighter could endanger public safety. Thus, fire department personnel are completely prohibited from any drinking of alcoholic beverages while on duty and while off duty, if they are wearing their uniforms. The 0.04% rule does not necessarily apply to firefighters.
In oral argument before this court, Burckel expanded this argument, claiming that the appointing authority was required to present evidence of the results of the blood alcohol test because the only charge against Burckel stated in the Superintendent McDaniels's July 25, 1995 letter was the results of the blood alcohol test. Burckel claims that he could not have been dismissed for "drinking" while in uniform because he was not charged with violation of the fire department regulations in his termination error.
Even if this argument had been properly briefed to this court, it has no merit. The termination letter stated, in pertinent part, as follows:
You were ordered to submit to substance abuse screening, based upon reasonable suspicion. You were tested on May 18, 1995. The results of the testing showed that you were positive for ethanol (alcohol). Pursuant to this, you were charged with violation of C.A.O. Policy # 89 and New Orleans Fire Department Policy # 2/06/-P-01-91.
Superintendent McDaniel went on to say that Burckel's dismissal was based on his review of the "reports on this incident, including the results of your substance abuse testing." Superintendent McDaniel found Burckel "guilty as charged."
As is evident from a cursory reading of the excerpt from the termination letter reproduced above, Burckel was charged with violation of New Orleans Fire Department Policy # 2/06/-P-01-91, which allows the fire department to take "disciplinary action" against any personnel for "drinking" while off duty, but in uniform. Burckel was properly charged with violation of that policy within the "four corners" of the termination letter, and the evidence presented at the hearing was sufficient to carry the appointing authority's burden of proving that Burckel violated that policy.
Moreover, Burckel has cited us to no authority that requires the appointing authority to present the results of a blood alcohol level in order to meet its burden of proof to support disciplinary action against an employee who has violated a regulation prohibiting alcohol consumption. This is not a case in which the only evidence of substance abuse is a random blood or urine test, such as Sciortino, 643 So.2d 841 or Bourque v. Louisiana State Racing Commission, 611 So.2d 742 (La.App. 4th Cir.1992). Blood alcohol test results are required only "where the only damning evidence against an employee is the results of a drug test and no corroborating evidence of substance abuse exists." Blappert v. Department of Police, 94-1284 (La. App. 4th Cir. 12/15/94), 647 So.2d 1339, 1342. Other competent evidence of Burckel's violation of policy was presented in the instant case. Burckel's arguments on this issue have no merit.

Remand
Both Burckel and the City claim that the Civil Service Commission abused its discretion in ordering a remand of the case. Burckel claims that the case should have been summarily reversed and he should have been reinstated; the City claims the dismissal should have been summarily affirmed. We agree with the City's arguments on this issue. In light of the evidence that Burckel violated the fire department policy prohibiting drinking, there is no need for the *558 City to be given further opportunity to present the evidence of Burckel's blood alcohol level at the time of the incident. Under the circumstances of the case, the Civil Service Commission's remand was improper.
However, because of the remand, the Civil Service Commission failed to consider the propriety of the "disciplinary action" imposed on Burckel in the instant case. In his "Appeal Form" to the Civil Service Commission, Burckel checked the following statement as his reason for appeal: "The punishment is unfair." Burckel added the following statement to the form: "I believe I was terminated unfairly." Burckel's primary purpose in filing the appeal was to seek a reversal of the finding that he had violated fire department policy. However, a secondary purpose was to seek review of the level of punishment imposed for his offense.
As previously noted, Burckel is a 15-year employee of the fire department who has never previously been subject to disciplinary action of any kind. As previously noted, Fire Department Policy # 2/06/-P-01-91 establishes a two-tier system for determining the appropriate punishment for employees who violate the department's substance abuse policy by consuming alcohol. Mandatory dismissal is the punishment for an employee who is found guilty of "drinking on duty or being under the influence of alcohol while on duty." However, when the employee is found guilty of "[d]rinking or being under the influence of alcohol off duty, in uniform," the punishment is more lenient; the department is allowed to take "disciplinary action." Obviously, the department is allowed to take a lesser action than "dismissal" to discipline an employee whose violation occurs "off duty, in uniform." Thus, the case is remanded to the Civil Service Commission to give Burckel an opportunity to argue that dismissal is too stringent a disciplinary action for his violation of regulations in this case, especially in light of his previously-spotless record of fire service after 15 years with the department.

Conclusion
Accordingly, the Civil Service Commission opinion upholding the fire department's findings that Burckel is subject to disciplinary action for his violation of departmental policy concerning substance abuse by consuming alcohol is affirmed. The Civil Service Commission's decision remanding the case to the hearing officer is vacated. However, the case is remanded to the Civil Service Commission for determination of the propriety of the disciplinary action taken against Burckel.
AFFIRMED.